A93A2316. CROCKER v. DOUGLAS COUNTY.
(441 SE2d 515)

BEASLEY, Presiding Judge.

This case involves a slip and fall in a puddle of water on an interior stairwell landing of the Douglas County Courthouse. Defendant Douglas County was granted summary judgment and plaintiff Crocker appeals.

" '(I)n order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant he slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance.' *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) [(1980)]. [To warrant summary judgment, defendant must] show that (1) it had neither actual nor constructive knowledge of the foreign substance or that (2) plaintiff had knowledge of the substance. [Cits.]" *Baggs v. Chatham County Hosp. Auth.*, 187 Ga. App. 834, 836 (2) (371 SE2d 653) (1988).

Plaintiff Crocker's affidavit in opposition to summary judgment elaborated upon her deposition testimony, which was neither contradictory nor vague or equivocal. The affidavit stated, inter alia, the following. On April 6, 1988, Crocker went to the courthouse to register to vote, obtain records from a deed room, and locate a friend employed by the county. It began to rain lightly as she arrived between 8:45 and 9:00 a.m. She was first in the record room for about 20 to 30 minutes. As she left and started down the hallway toward the stairwell to go downstairs, she saw through the window that it was beginning to rain harder. She walked into the main lobby area. No one with a wet raincoat or dripping umbrella was standing inside the doorway, or near the entrance to the main courtroom, or around the stairwell. During the time she walked toward the stairs, she did not observe a single bucket or container which could have been recognized as catching water from a leaky roof.

There was no mat at the top of the stairway or at the top of the landing (described as the bottom of the first set of stairs and the top of the second set of stairs, leading from the upper to the lower portion of the courthouse). She walked down the stairs normally, holding the rail in her right hand, walking slowly, and watching where she walked. She reached the bottom of the first section of stairs (the landing) without incident.

As she turned to the right, preparing to continue down the second flight of stairs, she glanced up momentarily but looked back down as she was taking her next step. Her foot touched down close to the right corner of the stairs, in the direction she was facing, near the stair rail post. She simultaneously noticed she was stepping into a puddle of water. As her foot contacted the wet floor, she slipped and began to fall.

She fell from the landing to the bottom of the second stairway. There was no one on it when she fell, but after she fell she noticed many people who appeared to be coming out of the lower courtrooms. She tried to catch herself from falling but ended up crushing her left wrist.

The puddle was about the size of a basketball but because of the lighting conditions and the location of the puddle, it was virtually impossible to see until she was stepping into it. She could not alter her step in mid-stride because to do so would have put her at greater risk of falling down the stairway. There was absolutely no way she could have seen the puddle before she was stepping into it.

Her affidavit further states that at all times during the incident, she exercised the required degree of care of any normally prudent person under the same conditions or similar circumstances. There was absolutely nothing else she could have done to have avoided the fall.

Courthouse maintenance supervisor Clark averred in affidavit

that during the time frame of Crocker's fall, every entrance door to the courthouse had posted on it the notice, "Caution: Beware of slippery floors especially on rainy days. Please wipe your feet." Clark was asked in deposition about what steps were taken by the maintenance crew when it was raining to ensure that people did not fall inside the courthouse and on the stairs leading down to the lower area. He testified that they used non-slip wax, had signs on the door stating, "Caution: Floor slippery when wet," had eight-foot mats for each doorway coming in, and periodically went around and checked to see if anybody "shook umbrellas off or whatever" and got water on the floor so they could get it mopped up. Clark further testified that in April 1988, the courthouse was having problems with roof leaks; there were four leaks at that time which they had attempted to patch; the leaks were not entirely repaired until 1990; there had been a leak approximately ten to fifteen feet in the back hallway of the area of the stairwell; the roof leaks kept moving around; there had been roof leaks since he began working there in 1978; non-skid tape had been installed on the stairway in 1978 and had not been replaced; portions of the tape had torn off and had not been repaired; he knew of another fall on the stairway prior to Crocker's; he had not filled out any accident reports recently and agreed that could be the result of finally getting a new roof.

According to safety management consultant McCarroll's affidavit, he had personally inspected the stairway where the incident occurred. In his opinion, Crocker's fall resulted from the formation of a basketball-sized puddle on the portion of the landing where she slipped as described in her deposition and from the incorrect placement of the non-skid tape on the landing. The puddle most likely resulted from a roof leak or some other water source that would provide a continuous source of water for an extended period of time. Because of certain physical characteristics, the water could not have come from a raincoat, umbrella, or from having been tracked from outside the courthouse.

He also stated that in high traffic areas such as a stairway, the non-skid tape should be replaced every two years. Much of the tape found on the stairway was useless and provided no protection at all because the rough surface was substantially worn away. Placement of the tape on the area where Crocker fell provided no protection whatsoever. The defects of the leak and misapplication of the non-skid tape occurred over an extended period of time and could and should have been corrected by maintenance or safety personnel long before Crocker's incident occurred.

Finally, McCarroll averred, the puddle as described by Crocker would not have ordinarily been detectible by a casual user of the stairway until the person was in the process of actually stepping into

it.

The evidence on summary judgment left open at least the critical factual question of the county's constructive knowledge of the water hazard on the stairwell which, it may reasonably be inferred, resulted from rain entering through leaks in the roof, of which the maintenance staff was aware. The county's evidence did not establish its compliance with reasonable inspection and/or cleaning procedures such as would establish its lack of actionable constructive knowledge. *Baggs*, supra at 836 (3); *Shiver v. Singletary*, 186 Ga. App. 746, 747 (2) (368 SE2d 523) (1988). Nor did the county show as a matter of law that Crocker knew, or should have known, of the water hazard.

The county was not entitled to summary judgment.

*Judgment reversed. Cooper and Smith, JJ., concur.*

DECIDED FEBRUARY 28, 1994.

*Hughes & Gibson, Ralph E. Hughes*, for appellant.

*Drew, Eckl & Farnham, James M. Poe, Mari L. Myer*, for appellee.